654 So.2d 609 (1995)
Sheila DANIELS, Appellant,
v.
Ron COCHRAN, Sheriff of Broward County, Appellee.
No. 93-3722.
District Court of Appeal of Florida, Fourth District.
May 3, 1995.
*610 Kevin J. Kulik of Edward M. Kay, P.A., Fort Lauderdale, for appellant, Sheila Daniels.
Abigail F. Morrison, Fort Lauderdale, for appellee, Ron Cochran, Sheriff of Broward County.
PARIENTE, Judge.
This is an appeal from a final order of civil forfeiture[1] of $39,780 in U.S. currency in favor of petitioner, Ron Cochran, Sheriff of Broward County, Florida. While we find that the trial court erred in entering a default based upon an invocation by Sheila Daniels (claimant) of her right to remain silent in response to petitioner's discovery requests, we reverse the order on grounds that the currency was illegally seized without *611 a warrant in violation of the Fourth Amendment to the United States Constitution and article 1, section 12 of the Florida Constitution.
This case arises under the Florida Contraband Forfeiture Act, sections 932.701-704, Florida Statutes (1993). On January 14, 1993, Detective Robert Massucco of the Broward County Sheriff's Office was conducting routine package checks on a conveyor belt at a Federal Express office using two K-9 drug-sniffing dogs. One dog alerted to a package addressed from a person named Tonya Jones in Lauderhill, Florida to claimant in Arizona.
Detective Massucco seized the package based on the alert of the dog and then proceeded to open the package. He had no previous information to have caused him to be on the look-out for this particular package nor did he have any other reason to suspect that the package might contain contraband. He testified that his experience with this particular dog had proven that the dog alerts only on currency that has been handled contemporaneously with narcotics, not on currency in the general population.
Upon opening the package, Detective Massucco discovered a number of smaller packages wrapped in Christmas paper. Inside one of the smaller wrapped packages he found U.S. currency. In the remaining packages he found toys with U.S. currency rolled and stuffed inside. Detective Massucco did not find any drugs or other contraband articles. A check by U.S. Customs revealed that the address representative of claimant was non-existent and that the telephone number was listed to an unknown couple with another address. Based on the manner in which the money was packaged and wrapped, the fact that the Christmas holiday had passed and the use of the fictitious address and telephone number, Detective Massucco found the transaction to be indicative of individuals involved in the transport of narcotics and/or the proceeds of narcotics. Accordingly, the Broward County Sheriff's Office impounded the currency.
The Florida Contraband Forfeiture Act (the Act) enables an authorized agency to seize currency "which was used or was attempted to be used as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, whether or not comprising an element of the felony, or which is acquired by proceeds obtained as a result of a violation of the Florida Contraband Forfeiture Act." § 932.701(2)(a)5., Fla. Stat. (1993). Recognizing that forfeitures are considered "harsh extractions" not favored by law or equity and that "[p]roperty rights are among the basic substantive rights expressly protected by the Florida Constitution," our supreme court has strictly construed the Act by providing specific procedural safeguards to enable it to pass constitutional muster. Department of Law Enforcement v. Real Property, 588 So.2d 957, 964 (Fla. 1991).
In Department of Law Enforcement, our supreme court set forth the preliminary fundamental requirement that to justify the continued seizure of property which has already been seized, the trial court must determine that probable cause exists to believe the property was used in the commission of a crime or represents the fruits of an illegal act. Id. at 966. Recognizing that "[i]n forfeiture proceedings the state impinges on basic constitutional rights of individuals who may never have been formally charged with any civil or criminal wrongdoing," our supreme court also held that a final order of forfeiture can issue only after a jury trial where the state must prove the criminal nature of the contraband by clear and convincing evidence. Id. at 967.
In this case, claimant never received a jury trial. Rather, a default order of civil forfeiture was entered based on claimant's refusal to respond to petitioner's request to produce or testify by deposition or interrogatory. To the extent that claimant's refusal was predicated on a legitimate invocation of the privilege against self-incrimination, the trial court improperly entered a default judgment. See In re Forfeiture of $13,000, 522 So.2d 408 (Fla. 5th DCA 1988) and cases cited therein. However, we also note that claimant, by failing to respond in some manner to the request to produce and interrogatories and by failing to appear for her depositions, did not follow the appropriate procedure for invoking the Fifth Amendment privilege *612 against self-incrimination. See DeLisi v. Bankers Ins. Co., 436 So.2d 1099 (Fla. 4th DCA 1983). The trial court further compounded the error by entering the default without conducting any inquiry to determine whether it was reasonably possible that the documents, answers and testimony sought could evoke a response forming a link in the chain of evidence which might lead to criminal prosecution. Id.
Although finding that the trial court's decision to enter a default was improper, we do not remand for a jury trial because the initial search of the package without a warrant violated both the Fourth Amendment to the United States Constitution and article 1, section 12 of the Florida Constitution. Accordingly, the fruits of the search, namely, the currency, were illegally seized.
Because forfeiture of property is governed by constitutional principles, Fourth Amendment protections apply when there has been a seizure of property in forfeiture actions. Department of Law Enforcement, 588 So.2d at 963. Florida's constitutional right to be free from unreasonable searches and seizures, article I, section 12 of the Florida Constitution, requires us to interpret this right in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. FLA. CONST. art. I, § 12. The Fourth Amendment, in protecting persons from unreasonable government intrusions into their legitimate expectations of privacy, extends to the contents of personal packages. See United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 120-21 (1983); Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); Ex parte Jackson, 96 U.S. 727, 6 Otto 727, 24 L.Ed. 877 (1877). In Ex parte Jackson, the Court established that sealed packages in the mail cannot be opened without a warrant:
Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household... .
96 U.S. at 733.
A law enforcement officer's authority to possess a package is distinct from his authority to examine its contents. See Place; Walter; Van Leeuwen. In Place, the Supreme Court reiterated this distinction stating:
Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.
462 U.S. at 701, 103 S.Ct. at 2641.
A person's Federal Express package is entitled to no less protection than letters and packages sent through the United States Postal Service. Accordingly, in each of the reported cases addressing the issue of the propriety of the search of a lawfully seized Federal Express package based on a dog's alert to the package, the law enforcement officer involved obtained a search warrant before searching the contents of the package. See, e.g., U.S. v. Smith, 34 F.3d 514 (7th Cir.1994); U.S. v. West, 25 F.3d 1052 (6th Cir.1994); U.S. v. Moore, 22 F.3d 241 (10th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 238, 130 L.Ed.2d 161 (1994); U.S. v. Hall, 20 F.3d 1084 (10th Cir.1994).
In this case, both the initial seizure of the package and the subsequent search were conducted without a warrant, based solely on the sniff instincts of an allegedly well-trained *613 narcotics detection dog.[2] A "canine sniff" by such a dog, which discloses the presence or absence of narcotics, is regarded as constitutionally proper because its limited scope and method of investigation does not constitute a search. Place, 462 U.S. at 707, 103 S.Ct. at 2644. However, a canine sniff which alerts to a package does not eliminate the requirement that, absent exigent circumstances, consent or other recognized exceptions, a search warrant must be obtained before a search of the contents of the package passes constitutional muster. See id. at 706-07, 103 S.Ct. at 2644-45.
This case is distinguishable from those cases involving motor vehicles in which courts of this state have upheld warrantless searches based upon probable cause derived from a narcotic dog's alert. See, e.g., Cardwell v. State, 482 So.2d 512 (Fla. 1st DCA 1986); Denton v. State, 524 So.2d 495 (Fla. 2d DCA 1988); State v. Williams, 565 So.2d 714 (Fla. 3d DCA 1990), review denied, 576 So.2d 295 (Fla. 1991), cert. denied, 500 U.S. 955, 111 S.Ct. 2265, 114 L.Ed.2d 717 (1991); State v. Taswell, 560 So.2d 257 (Fla. 3d DCA 1990). A search of a motor vehicle or its contents, based on probable cause but without a warrant, falls within the "automobile exception" established in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In Carroll, the Supreme Court enunciated the exception which applies to a warrantless search of a motor vehicle in light of the exigency arising out of the likely disappearance of the vehicle. If a package is located within the motor vehicle, the exception has been extended to the package as well. See California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).
While Detective Massucco may have been entitled to seize the package based on the dog's alert without a warrant, his opening of the package without a warrant violated the Fourth Amendment and concomitantly article 1, section 12 of the Florida Constitution. Following the alert of the dog, the detective should have received judicial approval in the form of a warrant prior to opening the package. See, e.g., State v. Bankston, 435 So.2d 269 (Fla. 3d DCA 1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984). Because a warrant was not obtained before searching the contents of the package, the currency was illegally seized in violation of the Fourth Amendment.[3] Accordingly, we reverse the trial court's order of forfeiture and remand for entry of an order releasing the currency to claimant.
WARNER and STEVENSON, JJ., concur.
NOTES
[1] On our own motion, we have modified the caption in this forfeiture proceeding from "In Re: Forfeiture of Thirty-Nine Thousand Seven Hundred Eighty Dollars ($39,780.00) in U.S. Currency," to the above because the caption as originally styled is contrary to the requirements imposed by the Florida Rules of Civil Procedure. Fink v. Holt, 609 So.2d 1333, 1335 (Fla. 4th DCA 1992); see also Ron Cochran, Sheriff of Broward County v. Harris, 1995 WL 229242, at *1 n. 1 (Fla. 4th DCA 1995).
[2] Although Detective Massucco testified to his experience with this dog, and the dog's ability to alert only to currency which has been contemporaneously handled with narcotics, we note in passing that although the dog alerted to the package, subsequent testing of the currency revealed no traces of narcotics on the currency.
[3] Because the search was illegally conducted, we also do not reach the threshold probable cause determination for the continued seizure of the currency as required in Department of Law Enforcement v. Real Property, 588 So.2d 957, 964 (Fla. 1991), specifically, whether based on the totality of the circumstances, the state set forth a proper nexus between the currency and a drugrelated crime pursuant to the terms of the Act. See, e.g., Dewey v. Department of Highway Safety and Motor Vehicles, 529 So.2d 300 (Fla. 2d DCA 1987), review denied, 525 So.2d 877 (Fla. 1988); In re Forfeiture of $37,388, 571 So.2d 1377 (Fla. 1st DCA 1990); compare Department of Highway Safety and Motor Vehicles v. Charles, 606 So.2d 750 (Fla. 5th DCA 1992).