SHEPHERD, J.
Defendant, D.A., appeals a juvenile court order adjudicating him guilty of possession of cannabis following a traffic stop predicated on an expired tag displayed on the vehicle he was driving. D.A. argues that the officer who executed the stop was constitutionally obligated to release him immediately upon deciding not to issue him a citation for the expired tag, and that, in any event, it was constitutionally improper to interrogate him about matters unrelated to the reason for the stop. We conclude D.A. was neither unlawfully detained nor improperly interrogated, and therefore affirm the adjudication of guilt. A brief summary of the facts of this case is necessary to explain our decision.
FACTS
On July 26, 2006, D.A. was pulled over by Officer Jorge Nunez on a residential street in south Miami-Dade County. Because there were five or six juveniles in the car, Officer Nunez called for backup. When the second officer arrived, they together ordered all of the occupants out of the car. Nunez then obtained from D.A. *676 his driver’s license and the vehicle registration. Seeing that the tag was expired for only ten days, Nunez decided not to issue D.A. a citation. Nunez then asked D.A., “[I]s there anything on you or in this vehicle that I need to know about. Illegal, that I need to know about.” D.A. responded, “[Y]eah, there’s a baggy of marijuana which is in the center console.” Nunez seized the bag of marijuana and arrested D.A. D.A. argues to us on this appeal that “once [Nunez] had the information necessary to determine if a traffic offense was committed or whether a citation will be issued, the detention must end.” Alternatively, says D.A., while Nunez “[was entitled to] ask questions about the suspected traffic offense, he cannot ask about unrelated matters.” As previously indicated, we find D.A.’s contentions to be legally unsustainable.
ANALYSIS
Although their language otherwise varies to some modest degree, both the Fourth Amendment' to the United States Constitution and its Florida counterpart, Article I, section 12, of the Florida Constitution, guarantee that “[t]he right of the people to be secure ... against unreasonable searches and seizures, shall not be violated.” A traffic stop is a seizure within the meaning of these provisions of the United States and Florida Constitutions. Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); accord Holland v. State, 696 So.2d 757 (Fla.1997). Such a seizure is permissible if the seizing officer has probable cause to believe a traffic infraction has occurred. Whren, 517 U.S. at 810, 116 S.Ct. 1769; Holland, 696 So.2d at 759; State v. Wimberly, 988 So.2d 116 (Fla. 5th DCA 2008); Parrish v. State, 937 So.2d 1231 (Fla. 1st DCA 2006); Stone v. State, 856 So.2d 1109 (Fla. 4th DCA 2003). It is indisputable that the police had probable cause to stop the vehicle. Gomez v. State, 748 So.2d 352, 352 (Fla. 3d DCA 1999) (“[T]he traffic stop was lawful because the officer had probable cause to believe that the defendant had violated the traffic code by driving a vehicle with an expired temporary tag.”); see also § 320.07(1), Fla. Stat. (2006) (“A vehicle shall not be operated on the roads of this state after expiration of the renewal period unless the registration has been renewed according to law”).
“Once a police officer stops a car for a traffic infraction, the officer is then justified in detaining the driver ‘only for the time reasonably necessary to issue a citation or warning.... ’ ” Sanchez v. State, 847 So.2d 1043, 1046 (Fla. 4th DCA 2003) (quoting State v. Moore, 791 So.2d 1246, 1249 (Fla. 1st DCA 2001)). Engrafted into this “reasonably necessary” time period by the law of this state is the customary driver’s license, tag, insurance, registration, and active warrant checks that routinely accompany a traffic stop. See, e.g., State v. Stone, 889 So.2d 999 (Fla. 5th DCA 2004); Sanchez, 847 So.2d at 1043; Blackmon v. State, 570 So.2d 1074 (Fla. 1st DCA 1990); see also State v. Brooks, 662 So.2d 440, 441 (Fla. 5th DCA 1995) (Sharp, J., dissenting) (“Florida has no policy against allowing a police officer to radio in information for a license and warrants check on drivers stopped for all traffic violations. It is done in most cases, and [the arresting officer in this case] testified he always does so, to be sure he is not dealing with fugitives.”); cf. State v. Rife, 133 Wash.2d 140, 943 P.2d 266, 270 (1997) (“The [Washington] Legislature did not grant police officers authority to search for outstanding warrants upon making a stop for a traffic infraction.”), superseded by statute, Wash. Rev. Code. § 46.61.021 (1997). Our jurisprudence holds these additional checks do not offend Fourth Amendment notions of “unreason *677 able[ness]” as to either length of detention or scope of inquiry, provided, of course, “[the] information can be obtained within a reasonable period of time.” Eldridge v. State, 817 So.2d 884, 887 (Fla. 5th DCA 2002); see also Sanchez, 847 So.2d at 1043; State v. Robinson, 756 So.2d 249 (Fla. 5th DCA 2000); State v. Brown, 691 So.2d 637, 638 (Fla. 5th DCA 1997); State v. Williams, 565 So.2d 714 (Fla. 3d DCA 1990); Johnson v. State, 537 So.2d 117 (Fla. 1st DCA 1988).[1] The reasonableness of a seizure therefore depends on what the police do, not on some pre-determined temporal limitation.
A question — in itself — is neither a search nor a seizure. See Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Terry v. Ohio, 392 U.S. 1, 32-33, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring).[2] It is well-settled that asking a question of a person not in custody is neither a search nor a seizure. Bostick, 501 U.S. at 434. Our case is distinguished only by the concededly not-insignifieant fact that D.A. was in custody. But, as eloquently explained by Judge Frank Easterbrook in his thoroughly scholarly en banc opinion on this topic in United States v. Childs, 277 F.3d 947, 950 (7th Cir.2002), “[a] view that custody transmutes questions into ‘seizures’ is backward[J” As he explains:
If the police may ask (without suspicion) questions of persons who are in no custody (e.g., walking down the street), people who are in practical but not legal custody (e.g., passengers on busses and airplanes), and people who are in formal custody pending trial or following conviction (e.g., prisoners ...), then why would the police need probable cause or reasonable suspicion to direct questions to persons such as Childs who are in legal custody but likely to be released soon?
Id. at 951.
Moreover, a question asked of someone already in custody causes no “unreasonable delay” within the meaning of the Fourth Amendment. Again to quote Judge Easterbrook:
Questions asked during detention may affect the reasonableness of [a] detention (which is a seizure) to the extent that they prolong custody, but questions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable or require suppression of evidence found as a result of the answers.
Id. at 949. Contrary to the argument made by D.A., Officer Nunez had more than one duty yet to be completed when he *678 decided he was not going to cite D.A. for an expired tag. As he testified, “I still wanted to investigate whether or not any of these juveniles had a warrant, and whether [D.A.’s] license was valid or not.”[3] D.A. remained in the lawful custody of Miami-Dade County at the time Officer Nunez inquired whether there was anything else he “need[ed] to know about.”
D.A.’s argument he should have been released the instant the officer decided not to cite him relies primarily on State v. Diaz, 850 So.2d 435 (Fla.2003). In Diaz, the officer executed the traffic stop because he was unable to see the expiration date on Diaz’s temporary tag. Id. at 436. As he approached the vehicle, before he made contact with Diaz, the officer verified he could clearly read the tag. Unlike most traffic stops — where probable cause exists at the moment of the stop and continues to exist through its duration (for example, stops for speeding or improper lane changes) — probable cause to hold Diaz and his vehicle evaporated the moment the officer “found nothing improper,” rendering further seizui'e baseless. Id. Nevertheless, the officer proceeded with the seizure and obtained information from Diaz which led to Diaz being charged for driving with a suspended license. Id. At most, the officer should have greeted Diaz and sent him on his way. Id. at 440.
In our case, D.A.’s seizure was not baseless. Officer Nunez at all times acted with probable cause of a traffic violation, and had not yet completed the usual and customary investigation etched in the law of this state as constitutionally permissible in the course of a valid traffic stop. That law includes the ability to ask unrelated questions, subject, of course, to the right of the detainee to refuse to answer. Because probable cause supported the stop in this case, D.A. did not have the right to be immediately released. The extra time Officer Nunez occupied to complete his investigation, including the time it took to ask the unrelated question inquiring of other illegal activity was short — not nearly enough to make the length of seizure in this case “unreasonable.”
Affirmed.

. See also United States v. Childs, 277 F.3d 947, 952-953 (7th Cir.2002) (distinguishing the obligation of an officer who stops a person on “reasonable suspicion" to release the person "as soon as the officers have assured themselves that no skullduggery is afoot” from the obligation of an officer to "[a] person arrested for an offense punishable only by a fine[, who] typically is given a citation (a 'ticket') and released,” and explaining that "although traffic stops usually proceed like Terry stops, the Constitution does not require this equation”).

. This Court — through our illustrious and learned long-time Chief Judge Alan Schwartz — has twice brought this Court to the precipice of so holding. See State v. Allende, 791 So.2d 589, 590 (Fla. 3d DCA 2001) ("[I]t is highly doubtful that a mere question has any constitutional implications whatever.”); Gomez v. State, 517 So.2d 110, 111 (Fla. 3d DCA 1987) (“Even indulging the doubtful presumption that [the question] implicated any constitutionally protected interest at all ....”). Today, we complete the task.

. We do not find it necessary to probe for purposes of this case whether the officer’s intentions toward the other occupants of the vehicle were lawful. See Arizona v. Johnson, — U.S.-, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).