NORTHCUTT, Judge.
When Mike Musallam pleaded no contest to charges of felon in possession of a firearm, § 790.23(a), Fla. Stat. (2011), and possession of a concealed weapon, § 790.01(2), he reserved for appeal the denial of his dispositive motion to suppress the handgun from which the charges stemmed. We conclude that law enforcement’s discovery of the gun was the fruit of an illegal detention. Therefore, we reverse Musallam’s convictions and remand with directions to discharge him.
Musallam came to the attention of law enforcement because he and several friends were smoking cigarettes in a public park. Smoking was prohibited in the park. A park employee spied the men and called a sheriffs deputy, who could issue a trespass warning. The deputy arrived and spoke with the men, each of whom eon- *569 sented to a search of his person. In the course of his conversations, the deputy learned that the men had come to the park in a car but none of them had a valid driver’s license. The deputy instructed them not to drive the car. The men departed on foot, but a few minutes later the park employee saw Musallam approach the car and retrieve something from its passenger-side door pocket. The park employee alerted the deputy, who returned and stopped Musallam.
The deputy observed a bulge in Musal-lam’s pocket that he had not noticed during their earlier encounter. When the deputy asked Musallam for consent to a pat down, Musallam asserted that the deputy had no reason to search him, and he refused. The deputy then detained Musal-lam and radioed for back-up. When the additional deputies arrived, the deputy began walking toward Musallam. At that point, Musallam advised that there was a gun in his pocket. The deputy retrieved the weapon.
 There can be no dispute that Mu-sallam disclosed his possession of the weapon as a direct consequence of his detention. Thus, the suppression issue turns on the propriety of the detention. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); F.E.H. v. State, 28 So.3d 213 (Fla. 4th DCA 2010) (holding that cannabis should have been excluded where defendant disclosed his possession of it during improper investigative detention). An officer may effect a temporary investigative detention if the circumstances reasonably indicate that the person detained has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (2012). The detention must be based on more than an “inarticulate hunch.” Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It is proper only when the officer has a “well-founded, articulable suspicion of criminal activity.” Popple v. State, 626 So.2d 185, 186 (Fla.1993).
Here, the circuit court held that Musallam was detained legally, positing that “[the deputy] knows something’s up because five minutes before [the bulge] wasn’t there and these guys are in the park.” But knowing “something’s up” is no more than a hunch; it does not amount to a well-founded, articulable suspicion of criminal activity sufficient to justify an investigative detention. See Newkirk v. State, 964 So.2d 861, 863 (Fla. 2d DCA 2007) (holding that investigative detention was not authorized where officer, who observed teenaged defendant and another minor run from some woods and saw defendant place something in his pants and cover it with his shirt, stopped the youths to “find out what was going on”); Eldridge v. State, 817 So.2d 884, 888-89 (Fla. 5th DCA 2002) (observing that the officer’s testimony that he felt defendant was lying and had something to hide demonstrated that the officer merely had a hunch).
Manifestly, there is nothing objectively suspicious about the fact that, having been directed to depart a public park and to leave behind the car in which he had arrived, a person would first retrieve his personal belonging from the car and put it in his pocket. See Rinehart v. State, 778 So.2d 331, 333 (Fla. 2d DCA 2000) (holding that fact that two people entered a car parked near a building that contained both businesses and residences at 4:30 a.m. during the spring break period was insufficient to give law enforcement a well-founded, articulable suspicion that criminal activity might be afoot); Carter v. State, 454 So.2d 739, 742 (Fla. 2d DCA 1984) (holding that investigative detention was not justified where officers made only brief observations of conduct that was at least equally consistent with noncriminal *570 activity, leading them to “feel,” “suspect,” or “believe” that criminal activity might be afoot).
The deputy testified that the park was in a high crime area and that Musallam acted “evasively.” But he did not describe any behavior that suggested Musallam was engaging in, or was about to engage in, a crime. See F.E.H., 28 So.3d at 216 (holding that officer who observed two males standing in parking lot of closed business during late hours in a high narcotics area lacked reasonable suspicion to justify investigative detention); Maldonado v. State, 992 So.2d 839, 843 (Fla. 2d DCA 2008) (concluding that defendant’s nervous and evasive behavior during traffic stop, his lying about the starting point of his trip, and his travel during early morning hours on an interstate highway that was a known drug corridor were insufficient to justify investigative detention beyond time necessary to write traffic citation); Eldridge, 817 So.2d at 888 (holding that defendant’s nervousness, failure to give a specific street address, and possession of large amount of cash did not establish reasonable suspicion); Sims v. State, 622 So.2d 180, 181-82 (Fla. 1st DCA 1993) (driving in high crime area and nervousness after traffic stop held insufficient to justify investigative detention beyond issuance of traffic citation). To the contrary, the deputy’s testimony that the park was a high crime area merely underscored why someone reasonably — and innocently— would remove personal items from a car that he had been instructed to abandon. See Carter, 454 So.2d at 742 n. 2 (noting that defendant sitting inside lighted vehicle parked outside lounge during business hours could have been searching for a misplaced cigarette lighter or performing numerous other innocent activities).
The circuit court erred when it denied the motion to suppress. We reverse Mu-sallam’s convictions and remand with directions to discharge him.
ALTENBERND and CASANUEVA, JJ., Concur.