ORFINGER, J.
The State of Florida appeals an order granting the suppression of evidence seized from Lachadvos Daniels following a traffic stop of a vehicle in which he was a passenger. The State argues that the trial *630 court misconstrued section 316.12S(2)(a), Florida Statutes (2011), which makes it a noncriminal traffic infraction to fail to “stop at a clearly marked stop line.” We agree and reverse.
The facts of this case are not in dispute. Deputy Mark Myers pulled over a vehicle in which Daniels was a passenger because, when the vehicle stopped near a stop sign, “[m]ost of the front tire and the whole hood was in front of the stop bar.” No other traffic violation was observed. When Deputy Myers approached the vehicle, he smelled marijuana. When backup arrived, the passengers, including Daniels, were searched. Deputy Myers found cocaine in Daniels’s possession. Daniels later moved to suppress the cocaine, arguing that as a matter of law, the undisputed facts show no violation of the traffic statute. He contends the vehicle was stopped “at” the line because the front tires were on the line, leaving the rest of the vehicle behind it. The trial court agreed, and granted Daniels’s motion to suppress.
In reviewing an order on a motion to suppress, “[f]indings of fact made by the trial court are subject to the substantial competent evidence standard. The application of the law by the trial court, however, is reviewed de novo.” State v. Thomas, 109 So.3d 814, 817 (Fla. 5th DCA 2013). Orders on motions to suppress come with a presumption of correctness, and all reasonable inferences and deductions from the evidence should be construed in support of the order. E.g., Kelly v. State, 77 So.3d 818, 821 (Fla. 4th DCA 2012) (citing Pagan v. State, 830 So.2d 792, 806 (Fla.2002)). Statutory interpretation is reviewed de novo. E.g., Paul v. State, 129 So.3d 1058, 1061 (Fla.2013).
In interpreting a statute, our principal objective is to discern legislative intent from the statute’s text. See Anderson v. State, 87 So.3d 774, 777 (Fla.2012). To discern legislative intent, courts apply a common-sense approach that requires consideration of the statutory language, the purpose of the statute, the evil to be corrected, legislative history, and pertinent case law that has applied the statute or similar enactments. Gonzalez v. State, 941 So.2d 1226, 1229 (Fla. 5th DCA 2006). When the Legislature does not define the words used in a statute, courts first examines the plain language of the statute in order to determine the parameters of a specific element of an offense. Paul, 129 So.3d at 1064; Marrero v. State, 71 So.3d 881, 886 (Fla.2011); Macchione v. State, 123 So.3d 114, 119-20 n. 3 (Fla. 5th DCA 2013).
“As a general matter, the decision to stop an automobile is reasonable [and therefore constitutional] where the police have probable cause to believe that a traffic violation has occurred.” Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The subjective intent of the police officer making the stop is not relevant. See State v. Robinson, 756 So.2d 249, 250 (Fla. 5th DCA 2000). However, if the police have no basis for stopping someone, then the stop is unconstitutional. See, e.g., Carter v. State, 120 So.3d 207, 209 (Fla. 5th DCA 2013) (holding no competent, substantial evidence supported sole rationale for traffic stop, and therefore, reversing denial of suppression); T.T.N. v. State, 40 So.3d 897, 900 (Fla. 2d DCA 2010) (reversing conviction where there was no basis for arresting officer to conduct investigatory stop).
Section 316.123(2)(a) requires a driver to stop “at” the stop line if one is marked. If no stop line is marked, the driver must stop before entering the crosswalk on the near side of the intersection. If there is neither a stop line nor crosswalk, the driver must stop near the entrance to the intersecting roadway to pro *631 vide the driver with a view of approaching traffic. Thus, the apparent purpose of the statute is to require a vehicle to stop before it is in a position where it could impede or hit pedestrians who might be in a crosswalk, or cross-traffic that could be in an intersection. We have little doubt that section 316.128(2), like other traffic safety laws, has as its primary purpose the preservation of the lives and safety of those.who use the highways. See Chaitkin v. Dep’t of Highway Safety & Motor Vehicles, 294 So.2d 352, 354 (Fla. 1st DCA 1974).
This Court has previously held that when a vehicle “pulled beyond or ahead of the stop line,” a traffic infraction has occurred under section 316.123(2)(a), and a valid traffic stop may result. Robinson, 756 So.2d at 250. However, neither the statute nor any Florida case defines what it means to stop “at” a stop line. The State contends that the statute, properly interpréted, requires a vehicle to stop before any part of the automobile crosses the line. Daniels, referring to a dictionary, observes that the word “at” is defined to indicate the “presence or occurrence in, on, or near.” Merriam-Webster’s Collegiate Dictionary 72 (10th ed. 2000). The few courts interpreting similarly worded statutes disagree with Daniels. See People v. Binkowski, 157 Cal.App.4th Supp. 1, 68 Cal.Rptr.3d 741, 744 (2007) (holding statute requiring “stop at a limit line” mandates “a full stop before any part of the vehicle crosses the limit line”); State v. Denner, 298 Wis.2d 249, 726 N.W.2d 357 (App.2006) (permitting officer to consider front tires being one or two feet over stop line in assessing, under totality of circumstances, whether driver seemed impaired); see also United States v. Smith, No. 2:06-cr-42-FtM-29SPC, 2006 WL 2226313 (M.D.Fla. Aug. 3, 2006) (finding that section 316.123(2)(a) is violated when a vehicle’s “front tires [a]re across the stop line”). But see Mumper v. State, No. 05-08-00141-CR, 2009 WL 201142 (Tex.App.Ct. Jan. 29, 2009) (noting, in dicta, that defendant had not violated law where front wheels stopped past stop line and rear wheels behind).
We reject Daniels’s interpretation of the statute. While a dictionary may, as Daniels contends, be a reliable resource to determine the meaning of a word used in a statute, like any other tool of statutory construction, its definition is not conclusive.[1] Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995). A stop line protects other motorists and pedestrians only if a vehicle stops when its front bumper reaches that line. This is particularly true because vehicles vary greatly in length. If we construe the statute otherwise, a big rig truck would not violate the statute even if its midsection is straddling the stop line and its tractor is protruding into the intersection. The Legislature could not have intended that potentially perilous result. See Binkowski, 68 Cal.Rptr.3d at 744.
*632 For these reasons, we reverse the order invalidating the traffic stop and suppressing the seized evidence.
REVERSED and REMANDED.
TORPY, C.J. and EVANDER, J., concur.

. “Dictionaries represent the opinion of the author(s) of the meaning of a word without regard to the particular context in which the word is used. Context is as important as the definitions of the individual words in determining what is meant by a statute. As Judge Learned Hand said, the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. Helvering v. Gregory, 69 F.2d 809, 810-11 (2d Cir.1934). Some dictionaries have the objective to record and report the way words are actually used in our society; others tend to prescribe proper usage, thereby perpetuating traditional definitions, even in the face of wide-spread changes in use. As a general proposition, dictionaries are hardly fixated on the pulse of our rapidly evolving language in our multi-cultural society.” Palumbo v. State, 52 So.3d 834, 836 (Fla. 5th DCA 2011) (Torpy, J., concurring specially) (footnotes omitted).